WARD v. FOLEY.

(Circuit Court of Appeals, Eighth Circuit.   October 13, 1905.)

No. 2,176.

VENDOR AND PURCHASER—CONTRACT FOR SALE OF INTEREST IN LAND—CON-
    STRUCTION.
    A contract providing, "I, G., hereby agree to sell and convey to F. all
    my interest in 320 acres of land at the rate of $14 per acre," construed,
    and *held* to be a contract providing for the sale of an interest in the land,
    at the rate of $14 for each acre in the entire tract.
    Hook, Circuit Judge, dissenting.
(Syllabus by the Court.)

Appeal from Circuit Court of the United States for the District
of South Dakota.

On the 28th day of January, 1898, James Foley, a citizen of the state of
Iowa, and Edward Gaule, a citizen of the state of Nebraska, were the equal,
joint owners of two quarter sections of land in the county of Yankton, state
of South Dakota.   Upon that date they made and entered into the following
contract, with reference to the sale by Gaule to Foley of his interest in the
land, as follows:

                                              "Stuart, Iowa, Jan'y 28th, 1898.
    "I, Edward Gaule, of Georgetown, Monroe Co., Ia., hereby agree to sell and
convey to James Foley, Stuart, Iowa, all my interest in three hundred and
twenty (320) acres of land situated near Welchtown, Yankton County, S. Da-
kota, at the rate of fourteen dollars ($14.00) per acre, and agree to give and
convey said James Foley, a true and perfect deed thereof, and fulfil this con-
tract in every particular according to the laws of Iowa and South Dakota,.
and in agreement thereof I accept this pr'y note for $50.00 as part payment of
agreement or contract.                     .         [Signed]   Edward Gaule.
    "I hereby accept Edward Gaule's offer.                      James Foley."

This contract not having been performed, and a controversy having arisen
between the parties as to its true construction, this suit was brought in the
Circuit Court on the 7th day of November, 1903, by James Foley to ·compel
specific performance of the contract according .to its terms.   The bill of com-
plaint sets forth the contract, and by proper averments states the contention
of complainant made with reference to the construction which should be placed'
upon its terms; avers his readiness and ability to comply with its terms as
construed by the court; prays a decree for specific performance of its terms,.
and that an accounting of the rents and profits accruing from the land may
be taken.   By way of answer to the bill defendant states the construction
which he places upon the contract, and admits the right of complainant to the
decree sought upon compliance with the terms of the agreement.   It is con-
ceded by both parties the two quarter sections contain but 318, instead of 320,
acres of land.   The case thus made was, by stipulation of parties, submitted'
to the court for decision upon the bill and answer alone.   The stipulation em-
bodies an account stated between the parties as to the rents and profits arising·
from the land, the correctness of which is conceded.   A decree for specific
performance was awarded complainant by the trial court, and the contract
was construed to entitle defendant to demand and receive from complainant
but $7 per acre for the 318 acres involved.   From this decree, defendant below
appeals.   The assignments of error challenge alone the correctness of the de-
cree as to the consideration to be paid under the terms of the contract. · Since·
the pendency of the appeal in this court the appellant, Edward Gaule, has
died, and the case has been duly revived in the name of his executor, Francis·
Ward.

Merrill C. Gilmore (E. G. Moon, Charles O. Bailey, and John H. Voorhees, on the brief), for appellant.

D. M. Reynolds and W. G. Porter (John H. King, on the brief), for appellee.

Before VAN DEVANTER and HOOK, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge, after stating the facts as above, delivered the opinion of the court.

From the above statement it is seen the sole point of controversy between the parties, submitted for decision, is the amount of money which is required by the terms of the contract to be paid by Foley as a condition precedent to the enforcement of the conveyance stipulated for in the contract. In other words, the question for decision is, what did the parties mean by the language used? To what did they intend to bind themselves by the terms employed in the contract made between them? To ascertain the true intent of the parties to a contract is the fundamental rule in the construction of all agreements. Mauran v. Bullus, 16 Pet. 528, 10 L. Ed. 1056; Canal Company v. Hill, 15 Wall. 94, 21 L. Ed. 64. The language employed by the parties in the contract is not that of technical learning or ambiguous meaning. It is apparently unaffected by local usage or peculiar custom. None of the extraneous facts or attendant circumstances surrounding the making of the agreement, or the subsequent conduct of the parties with reference thereto, are before the court for consideration. Therefore the decision must rest alone upon the language of the contract itself, and by giving to that language such plain, reasonable, common-sense meaning as is thought men of ordinary intelligence would be expected to give to it in business transactions of a similar nature.

In approaching such consideration of the contract it becomes material to first inquire what were the parties considering at the time; What forms the subject-matter of the engagement they were about to enter upon? Manifestly the transfer by Gaule to Foley, not of the land itself, but of the interest of Gaule in the land. This the language of the contract makes clear beyond doubt:

"I, Edward Gaule, hereby agree to sell and convey to James Foley all my interest in 320 acres of land."

The subject-matter of the contract, the thing to be dealt with by the parties, being thus clearly ascertained and stated, the contracting parties proceeded to an ascertainment and exact statement of the consideration or purchase price to be paid on the one hand, and received on the other, for the thing to be transferred to Foley, not as is often done in such cases, in bulk or by lump sum, but by fixing a basis upon which computation would be made when the exact acreage of the land should be determined, namely, "at the rate of fourteen dollars per acre" for each and every acre of the described land in which Gaule's interest, the subject-matter of the contract, inhered; that is to say, in 318 acres as subsequently ascertained, and not 320 acres as specified in the contract. Construing this contract, standing naked and alone, unaided by

contemporaneous facts or the subsequent conduct of the parties with relation thereto, as we must do in this case, the construction given seems to our minds, not only that which is most reasonable and logical, but that alone which most clearly, naturally, and sensibly expresses the true intent and meaning of the parties, as gathered from the language they employed to perpetuate the evidence of their engagement.

Again, it is thought the construction placed upon the contract in question not only accords with the reason of the case, but will be found to be in harmony with the adjudicated cases bearing upon the subject under investigation. There is a clear distinction drawn by the authorities between a contract to convey land absolutely and a contract to convey an interest in land. In Van Rensselaer v. Kearney et al., 11 How. 297, 13 L. Ed. 703, Mr. Justice Nelson, in delivering the opinion, makes reference to a deed purporting to convey all the right, title, and interest in real estate as follows:

"A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time; and does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view; and the consideration is regulated in conformity with it. If otherwise, and the vendee has contracted for a particular estate, or for an estate in fee, he must take the precaution to secure himself by the proper covenants of title."

The Supreme Court of Iowa, in Henderson v. Beatty, 99 N. W. 716, in commenting upon the subject, says:

"The bargain of necessity had reference to the thing to be acquired, and the consideration was in all probability regulated accordingly. When one undertakes to convey whatever right, title and interest he may have in land, this should not be enlarged upon, so as to require a transfer of the land itself."

In suits to compel the specific performance of contracts for the sale of land itself, it is the practice of courts of equity to inquire into the state of the title held by the party agreeing to convey, and, in case of the inability of such party to convey a good title to the entire estate, at the option of the purchaser, to refuse a decree of specific performance, or to compel an abatement of the purchase price to correspond with that interest which the seller may show himself able to convey. Hooper v. Smart, 18 L. R. Eq. 683; Leach v. Forney, 21 Iowa, 271, 89 Am. Dec. 574. Courts of equity, however, when called upon to command performance of contracts clearly providing in express terms for the transfer of an interest in real property, as contradistinguished from a sale of the property itself (as in the case at bar) will refuse to investigate the state of the title held by the party agreeing to sell, or to compel an abatement of the purchase price to correspond with such interest. Phipps v. Child, 3 Drewry, 709. In the light of the authorities it may be said, had Foley been in ignorance of the fact that Gaule owned but an undivided half interest in the land described, and had the contract provided for the sale of the land itself described therein, and the transfer of a good indefeasible estate thereto at the rate of $14 per acre, it is clear beyond doubt the court in such case, at the option of Foley, would have abated the purchase price one-half, and enforced performance of the contract as to the interest held by Gaule. But such

are not the facts in the case at bar. Here Foley knew the nature and exact extent of the interest held by Gaule in the property. For this reason it must be presumed it was not thought material to state in the contract the extent of the interest held. He contracted with reference to the purchase from Gaule of that interest alone, and agreed to pay therefor at the rate of $14 per acre.

It follows the decree must be modified to conform with the views herein expressed. It is so ordered.

HOOK, Circuit Judge (dissenting). I am unable to yield assent to the conclusions reached by my associates. It should be borne in mind that there was no controversy between Gaule and Foley over the extent of their respective interests. Had Gaule laid claim to the entire tract of land, or had his interest been indefinite and uncertain or the subject of unsettled controversy, there might be more reason for the construction now adopted, and the authorities cited in the foregoing opinion might be more pertinent. But such is not this case. Each one conceded that the other was the owner of an undivided half of the land. The proposition of Gaule may therefore be phrased in this way:

"I, Edward Gaule, hereby agree to sell and convey to James Foley my undivided half interest in 320 acres of land at the rate of $14 per acre."

The majority of the court hold that this means $14 per acre for each and every acre in which Gaule had an interest. In my opinion, the more reasonable construction is that it means "at the rate of $14 per entire acre" in title and quantity, and that Gaule's executor is entitled to but half of the total value of the land as so indicated. When one uses in a clause of admeasurement such words as "per acre," "per ton," "per pound," or "per dozen," he ordinarily means an entire unit of the quantity or number designated, and not a fractional interest therein; and, when he prefixes the phrase "at the rate of," such conclusion is strengthened. It seems to me quite clear that, when Gaule used the phrase "at the rate of $14 per acre," he intended an entire acre in respect of both quantity and title, and that the consideration for the sale was to be ascertained by a correlation of his partial interest with the designated value of the whole. The application of a stated price per unit to a definite and agreed fractional interest is of common occurrence in business affairs, and has an accepted signification. Suppose Gaule and Foley owned in equal shares 320 dozen of eggs, and Gaule had proposed to Foley in writing, "I will sell you my half interest in our eggs at the rate of 14 cents per dozen;" would it not appear that a construction that the price named was 14 cents for each and every dozen in which Gaule had an interest was too subtle and refined, and passed by the obvious meaning which lay on the surface? If one of two equal partners should propose to sell to the other all of his half interest in the firm property at the following rates: Cattle at $30 per head, land at $14 per acre, hay at $12 per ton, oats at 40 cents per bushel, and accounts at 80 per cent. of their face value—the more natural and reasonable construction would be that the prices specified related to the entire title, and that, if the proposition was accepted, the purchaser would not be required to pay the entire price for each head

of cattle, each acre of land, each ton of hay, each bushel of oats, and each outstanding account, "in which the vendor had an interest."

It is said in the foregoing opinion that the language employed in the contract is not that of technical learning or ambiguous meaning. One of the consequences of this holding would be that if, at the trial, Foley had offered testimony to show that the actual value of the entire title to the land did not exceed $14 per acre, it should have been excluded, as tending to vary or contradict a plain and unambiguous contract in writing. Cold Blast Transp. Co. v. Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696. What I believe to be the fallacy underlying the conclusions of my associates may perhaps be better disclosed by another illustration. Suppose Gaule and Foley were the equal owners of 320 registered 2 per cent. government bonds of the denomination of $100 each, and the written proposition of Gaule, accepted by Foley, was, "I will sell you my interest in our 320 government bonds at the rate of 104 per bond." The logic of the foregoing opinion would lead to the conclusion that Foley would have to pay $104 for each and every $100 bond in which Gaule had a half interest, which would be equivalent to $208 per bond for the entire title or ownership; and, although it might be said that it was common knowledge that bonds of that particular character had never attained such value, it would be replied that the contract was plain and unambiguous, and the parties thereto were competent to fix any value they chose upon their property.

The truth is the contract before us is ambiguous, and is susceptible of two possible constructions of unequal merit. I am of the opinion that the one adopted by the court below accords with the better reason, and that, even were it more balanced in doubt than I conceive it to be, it would be sustained by well-known rules of law Where the words of an instrument are doubtful, they are to be taken most strongly against the party employing them. Grace v. Insurance Company, 109 U. S. 382, 3 Sup. Ct. 207, 27 L. Ed. 932. Ambiguity in a written instrument must be interpreted most strongly against the person who prepared it. American Surety Company v. Pauly, 170 U. S. 144, 18 Sup. Ct. 552, 42 L. Ed. 977. Where the language of a contract is the vendor's it should be most strongly construed against him. J. J. Moore & Co. v. United States, 38 Ct. Cl. 590. Gaule is the vendor. The words of the writing before us are the words of Gaule, not those of Foley.

For these reasons I think that the judgment of the circuit court should be affirmed.