HUTTON *v.* NARDIN.

1. SPECIFIC PERFORMANCE — VENDOR AND PURCHASER—LAND CON-
TRACTS—FRAUD AND FIDUCIARY RELATION NOT SHOWN.
   In a suit by the vendee for the specific performance of a
   land contract with reference to the release of a certain
   lot on payment of the agreed amount, defendants' claim
   of fraud on the part of the vendee and that he stood in
   a fiduciary relation to one of the vendors, *held*, not sus-
   tained by the record.

2. VENDOR AND PURCHASER — LAND CONTRACTS—CONSTRUCTION —
EACH VENDOR TO BE PAID PRO RATA AMOUNT ON RELEASE OF
LOTS.
   Where two vendors owned a parcel of land as tenants in
   common, which they sold on separate contracts, a pro-
   vision therein that the vendor would release her interest
   in certain lots on payment on a *pro rata* basis of $1,500
   per acre, is construed to mean that each vendor is en-
   titled to be paid the *pro rata* amount rather than that it
   was to be divided between them as contended by the
   vendee.

Cross-appeals from Wayne; Mandell (Henry A.), J.
Submitted January 5, 1927.    (Docket No. 21.)    De-
cided June 6, 1927.

Bill by Nellie T. Hutton, individually and as ad-
ministratrix of the estate of George E. Hutton, de-
ceased, against Clara J. Nardin and another for specific
performance of a land contract.    Defendants filed a
cross-bill for reformation of the contract.    From the
decree rendered, both parties appeal.    Affirmed.

*Race, Haass & Allen,* for plaintiffs.

*Robert H. Cook,* for defendants.

[1]Specific Performance, 36 Cyc. p. 784 (Anno); [2]Vendor and
Purchaser, 39 Cyc. p. 1677 (Anno).

McDONALD, J.   In June, 1924, Clara J. Nardin and Emilie C. Collins were the owners in common of an undivided tract of 55 acres of land in Redford township, Wayne county, which was subsequently subdivided as Aberdeen Heights, Subdivision No. 1, and Aberdeen Heights, Subdivision No. 2.   In March, 1924, George E. Hutton, a real estate dealer of Detroit, entered into a preliminary agreement with defendants to convey said 55 acres to him for a certain consideration, with other provisions.   On June 3, 1924, he made a land contract for the purchase of the premises with each of them.   The contracts were alike save as to the consideration.   He agreed to pay defendant Nardin $1,200 an acre for her interest, and $1,000 an acre to defendant Collins for her interest (a copy of the Nardin contract will be found printed in the margin).[1]   In pursuance of these contracts the 20

---

[1] "This contract, made this third day of June, A. D. 1924, between Clara J. Nardin, of the city of Detroit, county of Wayne, and State of Michigan, party of the first part, and Geo. E. Hutton, of the village of Birmingham, county of Oakland, and State of Michigan, party of the second part.

"Witnesseth, that the said party of the first part, in consideration of the sum of thirty-three thousand ($33,000) dollars, to be to her duly paid as hereinafter specified, hereby agrees to sell and convey to the said party of the second part, all the following described land, situated in the township of Redford, county of Wayne, State of Michigan, to-wit:

"The undivided one-half interest of land, commencing at a stake 9 chains and 42 links, north of the southeast corner of section 17, town 1, south of range 10 east, running thence west 19 chains and 90 links, thence north 10 chains and 5 links, thence east 19 chains and 90 links to the center of the highway, thence south 10 chains and 5 links to the place of beginning, containing 20 acres of land, be the same more or less; and a part of the southwest quarter of section 16, town 1, south of range 10 east, described as, commencing at a point on the west line of said section 16, said point being 35 5/6 rods north of the southwest corner of said quarter section in the center of the road on the west line of said section and running north along said section line 83 rods to a point, being the southwest

per cent. down payment was made to each defendant, and, in turn, they paid the five per cent. commission to one Perry for making the sale. After making the preliminary agreement to purchase the premises in March, 1924, Hutton made an agreement to convey 20 acres of the premises to Ellen Martin and Mary A. Alt, and the remaining 35 acres he sold upon contract to Rachel Stewart. Soon after this George E. Hutton died, leaving all his estate to his wife, Nellie T. Hutton, and she was appointed administratrix. The premises were platted by Hutton's vendees, and several lots sold. In April, 1925, the vendee of lot number 362 in Aberdeen Heights, subdivision No. 2, paid the amount of his contract and demanded a deed. Alt and Martin then tendered to Mrs. Hutton the amount necessary to obtain a release of lot 362 under their contract. In turn Mrs. Hutton tendered to each of defendants, Nardin and Collins, $129.07, the amount

corner of the Redford cemetery grounds, thence running easterly along the southerly line of said cemetery grounds, 38.92 rods to the southeast corner of said cemetery grounds, thence northerly along the easterly side of the cemetery grounds 3.93 chains to the River Rouge, thence southerly along said river down stream, to the northeast corner of a parcel of land now owned by John Wolfram and wife, as per deed dated April 1, 1918, and recorded April 5, 1918, in liber 1260, page 301 of deeds, thence west along the northerly line of said Wolfram land 5.75 chains to a point being the northwest corner of said Wolfram's land, thence southerly along the westerly line of said Wolfram's land 5 chains to the south line of said section 16, thence westerly along the southerly line of said section 16, to the southeast corner of land now owned by the Methodist Episcopal Church, said point being 14½ rods east of the southwest corner of said section 16, thence northerly along the easterly line of said church property and said line extended, said line being parallel with the 14½ rods distant from the westerly line of said section 16, 35 5/6 rods to a point, said point being the northeast corner of said school lot, thence westerly along the northerly line of said school lot 14½ rods to the place of beginning, containing thirty-five (35) acres of land, be the same more or less.

computed to be due them on the basis of $1,500 an acre, and demanded its release. These sums were refused by defendants, Collins and Nardin, they claiming that each of them was entitled to have her interest computed on a $1,500 an acre basis. In other words, that instead of $129.07 each, they were each entitled to double that sum, or $258.14. Much negotiation followed, but the parties were unable to agree. Plaintiffs then filed this bill for specific performance of the Nardin-Collins contract with Hutton as to lot 362, which was sold and paid for as before set forth. Defendants answered, and defendant Nardin included a cross-bill charging Hutton with fraud, and claiming that he stood in a fiduciary relation to her when he purchased the premises. This was denied by the pleadings and the parties went to a hearing. At the

---

"for the said sum of thirty-three thousand ($33,000) dollars, which the said party of the second part hereby agrees to pay to the said party of the first part, as follows:

"The sum of six thousand six hundred ($6,600) dollars, receipt of which is hereby acknowledged and the payment of the additional sum of twenty-six thousand four hundred ($26,400) dollars, which the said party of the second part agrees to pay the said party of the first part as follows: Five per cent. (5%) of the purchase price per annum, payable semi-annually, together with interest at the rate of six per cent. (6%) per annum, payable semi-annually, all to be paid within five (5) years from the date hereof.

"It is agreed by the parties hereto, that the said party of the second part shall, during the life of this contract, pay and discharge, within the time prescribed by law, all such taxes and assessments (extraordinary as well as ordinary) as shall by any lawful authority be imposed upon the premises above described, and particularly, all taxes which shall be assessed upon this contract, or upon the contract interest of said party of the first part in and to said premises, by virtue of this contract, including the taxes for the year 1.....; and that the payment by said party of the second part of such taxes on this contract, or the contract interest of said party of the first part, shall not, in any case, be considered and treated as a payment on either the interest or the principal of this contract.

conclusion the chancellor took up defendants' claim of fraud and discussed it, and determined that there was no evidence of fraud. We have examined the record and we are content with that holding. We are unable to find that Hutton stood in a fiduciary relation to either of the defendants. The only relation that we are able to perceive is the relation of vendor and purchaser. The five per cent. was paid by defendants as a commission and went to Perry, and he, in turn, divided with Butcher, a brother of defendant Nardin. We think the question of fraud was well disposed of by the chancellor.

Later the chancellor took up the other question, namely, whether each was entitled to $258.14 for a release of lot 362, or whether this sum should be divided between them. Upon a consideration of the contract and evidence he reached the conclusion that

"It is agreed by the parties hereto that in default of the payment of any or all of said above mentioned taxes and assessments, by said party of the second part, within the time prescribed by law, it shall be lawful for said party of the first part to pay any or all of the said above mentioned taxes and assessments, and the moneys thus paid by said party of the first part may be added to the amount due on this contract, payable forthwith, with interest at the rate of 7 per cent. per annum, and shall be treated as a part of the money payable under this contract.

"It is understood and agreed that Clara J. Nardin shall join in the platting of said property and will release her interest in certain lots that may hereafter be sold on a pro rata basis of fifteen hundred ($1,500) dollars per acre and release payments shall not apply upon semi-annual payments of principal.

"It is agreed by the parties hereto, that the said party of the first part, on receiving payment in full of the said principal and interest at the times and in the manner above mentioned, and of all other sums chargeable in her favor hereon, shall and will, at her own proper cost and expense, execute and deliver to the said party of the second part, a good and sufficient and warranty deed of said above described land, free and clear of and from all liens and incumbrances, except such as may have accrued on said land subsequent to the date hereof by

each was entitled to $258.14.    Plaintiffs appeal from this holding, and defendant Nardin appeals from the decree made on the question of fraud.

The paragraph of the contract material to this question follows:

"It is understood and agreed that Clara J. Nardin shall join in the platting of said property and will release her interest in certain lots that may hereafter be sold on a *pro rata* basis of fifteen hundred dollars ($1,500) per acre and release payment shall not apply upon semi-annual payments of principal."

It will be observed by reading this clause that the contract provides that "she will release *her interest* on a *pro rata* basis of $1,500 an acre."    Had the contract provided that lots in the subdivision should be released on a *pro rata* basis of $1,500 an acre, plain-

or through the acts or negligence of said party of the second part.

"It is also agreed by the parties hereto, that said party of the second part shall have possession of said land, under this contract, on the ............

"It is also agreed by the parties hereto, that if the said party of the second part shall fail to perform this contract, or any part of the same, the said party of the first part shall, immediately after such failure, have the right to declare this contract void, and to retain whatever may have been paid hereon, and all improvements that may have been made on said land, as stipulated damages for nonperformance of this contract, and may consider and treat said party of the second part as her tenant, holding over without permission, and may take immediate possession of said land, and remove said party of the second part therefrom.

"And it is agreed that the stipulations herein contained are to apply to and bind the heirs, executors, administrators and assigns of the respective parties hereto.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

(Signed) "CLARA J. NARDIN,
(Signed) "GEO. E. HUTTON.

Witness:
(Signed) "WARD A. BUTCHER."

tiff's contention would be much more plausible, but the contract confines the *pro rata* basis of $1,500 an acre to *her interest.* There are some side lights in considering the deal as a whole which indicate that Hutton understood that defendants were to divide the $258.14, but the language of the contract is so obviously in support of the other meaning that we cannot give effect to plaintiff's contention. The language of the paragraph is too plain to be ignored.

The decree will be affirmed, and no costs will be allowed to either party.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred. BIRD, J., did not sit.