No. 35,612

RUTLAND SAVINGS BANK, OF RUTLAND, VT., *Appellee*, v. ROBERT STEELE, *Appellant*.

(127 P. 2d 471)

Opinion filed July 11, 1942.

*Kenneth W. Wagner,* of Topeka, argued the cause, and *George B. Collins* and *Wm. F. Pielsticker,* both of Wichita, were on the briefs for the appellant.

*A. V. Roberts,* of Wichita, argued the cause, and *Paul W. Schmidt* and *Verne Roberts,* both of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by the Rutland Savings Bank, of Rutland, Vt., against Robert Steele, for the purpose of obtaining an adjudication of the rights of the parties under the terms of certain written instruments which provided for the sale and repurchase of oil and gas rights under 1,560 acres of land situated in Rooks and Phillips counties. Judgment was for plaintiff, and defendant appeals.

Defendant appeals from the order overruling his motion for judgment on the pleadings and stipulation entered into by the parties and from the money judgment rendered against him.

It is conceded by both parties that the first and primary controversy lies in the interpretation of the written instruments. In that respect the proceeding was intended to have been instituted pursuant to the declaratory judgment act. (G. S. 1935, 60-3127 to 60-3132.) In other respects the proceeding is in the nature of an action for the recovery of money alleged to be due under the terms and provisions of the written instruments. In the petition plaintiff pleaded the instruments involved, asked for an interpretation thereof, and also prayed for a money judgment in the specific amount it claimed to be due and payable by defendant. The defendant filed an answer in which he admitted the execution of the

instruments and that an actual controversy existed with respect to their interpretation, and sought an adjudication of the further question whether he was required to pay an amount to plaintiff in excess of the amount he previously had tendered in order to be entitled to exercise an option to repurchase the oil and gas rights involved. In the reply plaintiff denied the correctness of the interpretation placed upon the instruments by defendant and again asked for a money judgment as prayed for in its petition.

The pertinent portion of the stipulation consisted in an admission of the execution and delivery of the written instruments, that defendants had tendered $3,900 to plaintiff, which plaintiff had refused to accept, and that the instant action was instituted for the purpose of obtaining an adjudication, under the declaratory judgment act *or under other proper proceedings*, of the question whether defendant was indebted to plaintiff in the sum of $3,900 in addition to the amount of $3,900 previously tendered. In other words, it was admitted an adjudication was sought with respect to the question whether defendant, in order to be able to exercise his option to repurchase, was required to pay plaintiff $7,800 or $3,900.

Three instruments are involved. The first is defendant's offer to purchase from the plaintiff. In that offer he expressed the desire to purchase from plaintiff 1,560 acres of land in Rooks and Phillips counties. In that offer to purchase the land was enclosed the following pertinent provision:

"I am willing to allow the seller to reserve ½ of all oil, gas and other mineral rights on a participating basis for a term of ten years from September 1st, 1940, and as long thereafter as oil or gas is produced in paying quantities from wells drilled during the 10-year period, *upon condition that I be allowed an unlimited option to purchase the ½ of all oil, gas and mineral rights which are reserved from this conveyance, at any time during the 10-year period, for the price of $5 per acre, in units of not less than 80 acres.* My reason for requiring this option is that I may want to clear the absolute fee title to this property in whole or in part and will expect therefore to have this privilege if I am interested in the purchase of this property." (Emphasis supplied.)

The second instrument involved was the contract of sale of the land from plaintiff to defendant. The portion of that contract not in dispute as to its meaning disclosed another party held an oil and gas lease on a one-half section of that land. The contract of sale provided that the plaintiff reserved one-half of all oil, gas and other mineral rights. It provided that at the time plaintiff would deliver the deed to defendant plaintiff would convey the whole fee

simple title to the property, including all oil, gas and mineral rights, and that the defendant purchaser would then immediately convey back to plaintiff, *on regular form of mineral deed,* the undivided one-half interest in the oil, gas and other minerals. The contract of sale also contained the following pertinent provision, the interpretation of which is in dispute:

".  .  . and it is further agreed that the purchaser shall, and by this instrument does have, an unconditional exclusive option during the 10-year period described above, to purchase all or any part of the undivided ½ interest in all oil, gas and other mineral rights which have been reserved in this contract in not less than 80-acre units at the price of $5 per acre and upon further condition that this option extends only during the period of non-development on these premises; that is, if and when oil or gas is produced in paying quantities on these premises within the 10-year period, then the purchaser's right under this option shall be null and void and of no further force or effect;  .  .  ."

There was a third instrument which was necessary to complete the deal. That instrument was referred to in the above contract of sale as the "mineral deed," which defendant was to execute to the plaintiff. That instrument when executed was entitled "Sale of Oil and Gas Royalty." In it the defendant, Robert Steele, conveyed to the plaintiff bank the following:

"An undivided one-half (½) interest in and to all oil, gas and other minerals in and under (here follows same description as in exhibits 'A' and 'B')."

This instrument contained a provision with respect to defendant's right to repurchase which was similar to that contained in the contract of sale. It reads:

"And it is further agreed, stipulated and reserved that the said grantor herein, his heirs, successors or assigns, shall and by this instrument does have an unconditional exclusive option during the ten year period described above, to purchase all or any part of the undivided one-half interest in all oil, gas and other mineral rights which have been granted in this conveyance in not less than eighty acre units at the price of five dollars per acre  .  .  ."

The proper interpretation of the last-quoted provision constitutes the issue in the lawsuit. As previously stated, there were 1,560 acres in the entire tract of land. Defendant had exercised his option to repurchase the whole undivided one-half interest in the minerals in place under the entire 1,560 acres of land which he previously had purchased. Was the amount which defendant was required to pay to plaintiff in order to effectually exercise that option, 5 times 1,560 or 5 times 780? In other words, was that amount $7,800 or $3,900? The trial court concluded it was $7,800 and rendered judgment for

the sum of $3,900, as prayed for in plaintiff's petition, which was in addition to the $3,900 defendant conceded he was required to pay and had tendered.

The parties agree the subject of the instruments is oil and gas in place and that the total amount of land therein described was 1,560 acres. They both insist the written instruments are unambiguous and that they clearly support their respective contentions.

The defendant, appellant, in substance contends plaintiff, appellee, reserved a one-half interest in the minerals in place when it sold the 1,560 acres of land to appellant and that appellee gave appellant an option to purchase that one-half interest which appellee *reserved in the contract,* and that the amount due on the purchase of that reserved interest by appellant should be determined by multiplying one-half of the total acreage, 780 acres, by $5, the unit price. But did appellee reserve 780 acres, which appellant was given an option to purchase, or did appellee reserve an undivided one-half interest in and to all the oil and gas in place under the entire 1,560 acres, which appellant was given an option to purchase? We think it was the latter. This intention is also disclosed with reasonable clearness in the final instrument erroneously denominated "Sale of Oil and Gas Royalty." By that instrument appellant sold to appellee "an undivided one-half interest in and to *all* oil, gas and other minerals in and under" the entire 1,560 acres and not in and under 780 acres. It is true appellant had an option to purchase the minerals in place under all or any portion of the 1,560 acres, provided he made the purchase in units of not less than 80 acres. Appellant, however, exercised the option to purchase the undivided one-half interest in and to the minerals in place in and under the entire 1,560 acres and having thus exercised his option he was required to pay for that interest in the entire acreage and not merely for that interest in one-half of the acreage. It is conceded the price of that interest was $5 per acre.

No cases clearly in point, from this jurisdiction, are cited by either party, and our search has disclosed none. The question involved, however, merely calls for the interpretation of the contracts. The principles applicable to the interpretation of the instruments here involved are no different from those pertaining to the interpretation of any other written contract. The principal and primary question is what did the parties intend? The interpretation we have placed upon the instruments here involved is, however, amply supported by

the interpretation placed upon instruments involving the same or similar questions which have arisen in other jurisdictions. (*Ward v. Foley*, 141 Fed. 364; *Zeno Iron Company v. John G. Jacobson and Others*, 105 Minn. 294, 117 N. W. 614; *Hutton v. Nardin*, 238 Mich. 689, 214 N. W. 247.)

In the Ward case it was held:

"A contract providing, 'I, G, hereby agree to sell and convey to F all my interest in 320 acres of land at the rate of $14 per acre,' construed, and *held*, to be a contract providing for the sale of an interest in the land at the rate of $14 for each acre in the entire tract." (Syl.)

In the Zeno Iron Company case it was decided:

"A contract for the purchase of real estate, which provides that 'the said party of the second part covenants and agrees to pay said first parties $50 an acre for their undivided one-half interest in said lands,' requires the payment of $50 for the undivided one-half interest in each acre." (Syl.)

Appellant argues that usage in conveying mineral and royalty interests in terms of mineral acres and royalty acres is recognized and sanctioned in this and other jurisdictions. Custom or usage was not an issue in this case. No evidence of custom or usage was admitted or offered. Moreover, it is conceded the instruments in question are unambiguous. That being true, there was no occasion for the trial court to invoke custom or usage as an aid to interpretation.

We have carefully examined our own cases cited by appellant. It will serve no useful purpose to analyze decisions involving conveyances of royalties. This is not a royalty case. No language employed in the instruments before us could be construed as indicating an intention to convey royalties or an interest therein. That is true notwithstanding the last instrument denominated "Sale of Oil and Gas Royalty." The terms of an instrument and not its name determine its nature and character.

The instruments in this case dealt with oil and gas in place. Properly and accurately speaking, minerals in place are not royalty. While the word "royalty" is, at times, otherwise employed, it is, in its ordinary meaning, the landowner's share in oil or gas actually produced and does not include a perpetual interest in oil or gas in the ground. (*Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52; *Leydig v. Commissioner of Internal Revenue*, 43 F. 2d 494.) Ordinarily the one-eighth interest in the oil produced, which the landowner receives in consideration for the grant or authority to the lessee to develop and operate, is called royalty, and the seven-eighths interest in the oil actually produced, which belongs to the lessee, is

called the working interest. (*Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957.) Neither of those interests are oil and gas in place. In the instant case, however, irrespective of whether the interest, which appellant was given an option to purchase, constituted royalty or a right to the oil and gas in place, the measuring stick for the consideration he was obliged to pay was the same. It was $5 for each of the 1,560 acres in which he elected to purchase an equal undivided one-half interest.

Appellant also urges it was error for the trial court to render a money judgment in the instant action which he contends was prosecuted only under the declaratory judgment act. He refers to the provisions of G. S. 1935, 60-3129, which authorizes relief in addition to obtaining an interpretation of the written instrument. He insists, under that statute, further relief may be obtained only by petition to a court having jurisdiction to grant further relief. He points out, if the subsequent application be deemed sufficient, the court shall, on reasonable notice, require any adverse parties whose rights have been adjudicated by the declaration of right, to show cause why further relief should not be granted. There can be no question concerning the fact that G. S. 1935, 60-3129, prescribes a method by which further relief—than mere interpretation—may be obtained. We previously herein reviewed the issues which were joined by the pleadings. We also directed attention to the stipulation of the parties which requested an adjudication of the issues under the declaratory judgment act *or other proper proceedings,* of the question whether defendant remained indebted to plaintiff in the sum of $3,900 as prayed for in plaintiff's petition. In view of these circumstances appellant is in no position to complain concerning the fact that judgment was rendered pursuant to the pleadings and stipulation. Moreover, the trial court filed a memorandum opinion which it denominated "Findings of Fact." It embraced a conclusion of law that judgment be entered for plaintiff for $3,900, with interest, as prayed for. The record before us does not disclose the alleged error of rendering judgment was called to the court's attention in any manner.

The judgment is affirmed.