No. 39,147

DOROTHY ELLEN TEGARDEN, Executrix of the Estate of Merle Leroy Tegarden, Deceased, *Appellant,* v. MARGARET TEGARDEN BEERS, et al., *Appellees.*

(265 P. 2d 845)

Opinion filed January 23, 1954.

*J. S. Brollier,* and *Paul A. Wolf,* both of Hugoton, and *Leo Shapiro,* of Los Angeles, Cal., were on the briefs for the appellant.

*Victor H. Tegarden,* and *Auburn G. Light,* both of Liberal, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by Dorothy Ellen Tegarden, executrix of the estate of Merle Leroy Tegarden, deceased, to

obtain a declaratory judgment on a postnuptial contract entered into by and between the deceased and his former wife, which agreement was approved by a court and was made a part of a decree of divorce, for an accounting and to compel defendants, interest holders in land involved in the postnuptial agreement, to make an assignment of the oil and gas royalties to plaintiff.

Certain defendants prevailed and plaintiff has appealed.

We shall continue to refer to the parties as plaintiff and defendants.

The cause was submitted to the trial court on the pleadings, stipulated facts and the transcript of a pretrial conference. The district court, therefore, made no findings of fact. The material facts were, in substance, as follows:

On January 19, 1945, Merle Leroy Tegarden and his former wife, Margaret Tegarden (now Margaret·Tegarden Beers, one of the parties named as a defendant), entered into a postnuptial contract, the pertinent terms of which will be noted later, and on the same date, pursuant to the terms of that contract, Merle executed a quitclaim deed to Margaret conveying to her all of his interest in and to certain tracts of land involved.

Merle owned only a fractional interest as a tenant in common in each of the tracts described in his deed to Margaret. The other fractional interests were then owned by the defendants, Goldie B. Dubois, mother of Merle, and by his brother, Victor H. Tegarden.

On September 29, 1945, Margaret obtained a decree of divorce from Merle. The postnuptial contract, previously referred to, was approved by the court and was made a part of the decree. In that contract Merle L. Tegarden was party of the first part and Margaret Tegarden was party of the second part. After contracting relative to certain personalty, the contract further provided:

"That all of the rest, residue and remainder of the property belonging to said parties, jointly or severally, shall be the sole and separate property of party of the second part *in fee simple, free and clear of liens or encumbrances, said property consisting of an undivided interest in several tracts of land in Kansas, Oklahoma and Colorado, for which first party agrees to execute a proper deed of conveyance unto second party* . . . and first party hereby releases, relinquishes and quitclaims unto second party all of his right, title and interest in and to said properties *in fee simple and forever.*

.    .    .    .    .    .    .    .    .    .    .    .    .

"It is further understood and agreed that the real property above referred to is now, or may soon be, placed *uner* oil and gas lease and that second party has full authority to execute as a feme sole such leases to such persons, firms or corporations and upon such terms and conditions as she may see fit,

and to collect and keep for her use *an* benefit all bonuses and delay rentals collected under said leases; that in the event of actual production of either oil or gas upon said land, or any part thereof, *then owned and held by second party, second party agrees to assign to first party a one-half interest in all royalty which may accrue under said leases in excess of the amount of delay rental designated by the lease under which said wells are drilled.*" (Our italics.)

In addition to approving the contract the decree of divorce further provided that if Merle Leroy Tegarden failed to deliver proper conveyance for transfer of title to Margaret Tegarden the decree should operate as such transfer.

On or about October 25, 1945, production of gas was had on the one quarter section of land in Stevens county which was one of the tracts of land conveyed by Merle to Margaret. Production was later obtained on another quarter section in Seward county after Merle's death.

Effective January 1, 1947, Goldie B. Dubois, Victor H. Tegarden and Margaret Tegarden Beers, the owners of fractional interests in the land involved, entered into a voluntary partition of the property owned by them as tenants in common. By the partition Goldie B. Dubois took title to the section in Stevens county on which there was gas production. This was the only land on which there was production at that time.

On or about March 24, 1947, a check drawn on The Peoples National Bank of Liberal, payable to the order of Merle L. Tegarden, in the amount of $8.03, made by Dubois and Tegarden, by Victor H. Tegarden, was forwarded to Merle L. Tegarden by Goldie B. Dubois, in a letter in which was enclosed an unsigned typewritten statement, as follows:

"In checking up on the gas money from Stevens County there was a little more than the regular lease money so this check is to pay what was your share out of the *14*, or in other words, was ½ of that over and above the regular lease due each owner of ¼. In our division of the land this quarter fell to me with all mineral rights so this year's returns will all be mine."

Such check was endorsed by Merle L. Tegarden and was paid by the bank on which it was drawn.

On June 6, 1947, Merle died, leaving a holographic will, which reads:

"November 19, 1946
"Los Angeles, Calif.

"I, Merle L. Tegarden, make this my last will and testament.
"I give, devise and bequeath unto my loving wife, Dorothy Ellen Tegarden, all of my property of every kind whatsoever, wheresoever situated.

"Although practically all of my then property and effects were given to my daughters, Terry Jane and Nancy L. Tegarden, at the time of my divorce from their mother, and the estate that I now leave is from the efforts of my wife, Dorothy, and myself. I appreciate Dorothy's willingness and desire to assist my daughters if she is able to do so.

"My wife, Dorothy, is hereby appointed executrix to act without bond of any kind.

"Executed this November 19, 1946.

"MERLE L. TEGARDEN."

On September 5, 1947, Margaret Tegarden Beers, with joinder of her husband, conveyed all of the property she owned to her children, Terry Jane Tegarden and Nancy Lynn Tegarden, reserving a life estate therein.

On January 12, 1950, plaintiff, Dorothy Ellen Tegarden, instituted the instant action as executrix of decedent's estate against the defendants, Goldie B. Dubois, decedent's mother, Victor H. Tegarden, decedent's brother, and against Letha M. Tegarden, Victor's wife.

Other parties originally named as defendants in the action were Margaret Tegarden Beers and Douglas D. Beers, her husband, and Terry Jane Tegarden and Nancy Lynn Tegarden, minors. Pretended service of summons on the above parties named in this paragraph was had by publication, which service was quashed. No further service was attempted on these particular parties and they are not now parties to this litigation. Although the name of Margaret Tegarden Beers has been retained and carried in the caption of the case throughout its history, including the appeal to this court, the title indicating she is an appellee, is erroneous. Under our statutes, however, the case must be docketed in this court with the same title that it had in the trial court, except that the parties are to be designated as "appellant" and "appellee." (G. S. 1949, 60-3315.)

Letha M. Tegarden, the wife of Victor H. Tegarden, died during the pendency of this appeal. The only appellees in this case, therefore, are Goldie B. Dubois, the mother, and Victor H. Tegarden, the brother of the decedent.

The parties differ on the question whether the postnuptial contract was merged in the decree of divorce. Defendants contend it was not but was only identified by the decree, citing *Petty v. Petty*, 167 Kan. 510, 207 P. 2d 428. Plaintiff, in substance, argues judgment was rendered pursuant to the terms of the contract and that un-

appealed from the judgment became a finality, and its validity cannot be challenged now for that reason.

We shall not pursue those contentions. In our opinion an answer to a more fundamental question is determinative of this appeal. We shall assume, without deciding, that plaintiff is correct in her contention the postnuptial contract was merged in the decree. The fundamental question remains—what is the legal effect of the contract? The purpose of this action was to obtain an answer to that question.

The specific question is—did the postnuptial agreement between the decedent and his former wife, Margaret, run with the land conveyed to Margaret, or did it constitute a personal contract between them which required Margaret to deliver to Merle, during his lifetime, the share of the royalties designated in the contract?

It is conceded the deed to Margaret, required by the contract, was executed and delivered by Merle. It vested in Margaret a fee simple title to Merle's interest in the lands free and clear of all encumbrance. The deed contained no reservations or restrictions of any kind or character. Margaret, therefore, had full authority and power to lease or convey her interest to whomsoever she desired. The postnuptial contract relating to royalty was not made binding on the heirs, successors or assigns of the parties. The royalty provision did not require Margaret to make an assignment or conveyance of any kind in the land. She was merely required to give to Merle the part of the royalty designated in the contract if, and when, oil or gas was actually produced. Neither the contract nor the deed contained a condition of forfeiture or a right of reentry on the lands by Merle in the event Margaret failed to perform that obligation under the contract.

Margaret's obligation, as stated, was only to share with Merle in the royalties, that is in her, the landlord's, share of the oil and gas after it was produced. The production in which she agreed to share was personalty. It was no part of the land. (*Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 150-151, 40 P. 2d 463; *Hickey v. Dirks,* 156 Kan. 326, 133 P. 2d 107; *Holland v. Shaffer,* 162 Kan. 474, 480, 178 P. 2d 235, 173 A. L. R. 845, 854; *Robison v. Robison,* 165 Kan. 494, 499, 196 P. 2d 159; *Lathrop v. Eyestone,* 170 Kan. 419, 424, 227 P. 2d 136; *Leydig v. Commissioner of Internal Revenue,* 43 F. 2d 494.)

The part of the postnuptial contract pertaining solely to this personalty does not run with the land. (*Nigh v. Haas,* 139 Kan. 307,

31 P. 2d 28.) That contract must not be confused with the rule that the covenants of an oil and gas lease are of a character which naturally run with the land. (*Holland v. Shaffer,* supra.) We are in nowise concerned here with the covenants of an oil and gas lease but only with a contract which pertains to a division of the oil and gas on such a lease after it has been produced. Had Margaret failed to deliver to Merle the share of the royalties specified in the contract Merle would have had a personal action against her for breach of covenant. That action died with him. (*Wilson v. Highley,* 98 Kan. 154, 156, 157 Pac. 411.)

The later voluntary partition of the lands by the parties, the distribution of royalties thereafter and decedent's will are evidence of an operative interpretation of the postnuptial contract in harmony with the views herein expressed. The trial court further held any other interpretation of the contract would violate the rule against perpetuities. In view of our interpretation of the contract we need not treat that or any other question.

The judgment is affirmed.