CHRISTINA FROELICH, *Appellee,* v. UNITED ROYALTY COMPANY, an express trust, and M. H. WATTS, S. M. BROWN and RUTH STEWART, as trustees thereof, *Appellants.*

No. 39,841

FRANK FROELICH, *Appellee,* v. UNITED ROYALTY COMPANY, an express trust, and M. H. WATTS, S. M. BROWN and RUTH STEWART, as trustees thereof, *Appellants.*

(290 P. 2d 93)

Opinion filed November 12, 1955.

*Kirke W. Dale,* of Arkansas City, argued the cause, and *Donald Hickman,* of Arkansas City, and *Marvin E. Thompson, George W. Holland,* and *Alan Kent Shearer,* all of Russell, and *G. C. Spillers,* and *G. C. Spillers, Jr.,* both of Tulsa, Oklahoma, were with him on the briefs for the appellants.

*F. F. Wasinger,* of Hays, argued the cause, and *Delmas L. Haney,* of Hays, was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: Each of these appeals is from a decree of the trial court quieting title of appellee in and to certain land in Ellis county. The cases were consolidated for review in this court and they will be treated throughout this opinion as one case.

Christina Froelich's land is the north half of the northwest quarter, and Frank Froelich's land is the north half of the northeast quarter, all located in section 34, range 16 west, in Ellis county, and will hereinafter be referred to as "the land."

In order to present the situation clearly, we will turn immediately to the stipulated facts, which were substantially as follows:

The United Royalty Company, an Oklahoma express trust, has M. H. Watts, S. M. Brown and Ruth Stewart as presently qualified and acting trustees. The United Royalty Company will be referred to as "United" in this opinion.

On August 11, 1922, pursuant to Oklahoma statutes, J. F. Pochel, Olen Burnham, and H. L. Landon, both as subscribers and trustees, executed the declaration of trust which established United for the purpose of uniting or pooling the undivided one-half of the oil and gas and mineral rights of the fee owners of 50,000 acres of several oil bearing states in exchange for 2,000,000 units in the pool. The original term of the trust was twenty-one years and was later extended for an additional twenty-one year period from August 11, 1943. The pool of acreage was fully obtained by United in accordance with the agreement.

George H. Butler, on October 10, 1924, was the owner of the land and he and his wife and United executed a contract and royalty pooling agreement, hereinafter called "agreement" and on the same date the Butlers executed and delivered a royalty conveyance to United. The royalty conveyance was recorded in Ellis county on October 11, 1924, but the agreement was not recorded in Ellis county until March 15, 1952.

In return for the above documents, George H. Butler and his wife received a certificate for 4,480 units in United's mineral right pooling organization. These units were later transferred by the Butlers on July 30, 1925; 1,494 units went to C. C. Stanley, 1,493 to Victor H. Martin, and 1,493 to G. O. Kimmel. The Butlers received $67.57 and Butlers' assignees received $772.23 from United on these units. United's block of acreage had five producing wells in Arkansas, thirty-three producing wells in other parts of Kansas than Ellis county, sixteen producing wells in Oklahoma, and one producing well in Texas.

At the time of the agreement there was an oil lease on the land dated December 20, 1923, to Mississippi Valley Oil Company, which was released on December 5, 1927. There were other leases between May 26, 1931, and June 15, 1943.

George H. Butler died May 26, 1931, and Frank Froelich, Sr., acquired the north half of the northwest quarter from Butler's heirs by a special warranty deed dated June 16, 1934. Frank Froelich, Sr., died testate leaving the north half of the northwest quarter to Christina Froelich, who leased it to O. E. Bradley on June 15,

1943. There is and has been production on this land since July 9, 1950.

On March 31, 1948, Frank Froelich obtained title by warranty deed from George H. Butler, Jr., and his wife, Ione, to the north half of the northeast quarter. This land was leased for oil and gas several times between 1927 and 1948. On September 17, 1948, a lease was made to Verner R. Schoup and production started November 12, 1949.

At the time title was vested in them neither of the appellees had any notice of United's interest except as disclosed by records in Ellis county. Appellees filed actions in the district court, issues were finally joined, stipulation of facts was made, the cases were submitted to the court and the court in its judgments of December 15, 1954, quieted appellees' title as against any interest of United. Motions for new trials were filed and overruled. These appeals, which, as previously stated, have been consolidated for review, followed.

There were nine specifications of error, the substance of which was as follows:

The court erred (1) in quieting title in appellees and in not quieting title in appellants; (2) in rendering the judgments which were not warranted by the agreed stipulation of facts; (3) in determining that the intention of the Butlers and United was to create a mere royalty as distinguished from a mineral interest in or to minerals in place; (4) in determining the affixing of an internal revenue documentary stamp failed to show the parties intended to transfer real property and not personal property; (5) in determining that the specific provision that the grantors were to retain the exclusive leasing privilege for oil and gas, and receive the bonuses and rentals evidenced an intent to create a royalty interest only, as distinguished from minerals in place; (6) in determining that the recorded royalty conveyance did not impart notice to all of United's interest in minerals in place and in overruling United's motion for a new trial.

All matters pertinent to this appeal were set out and covered in appellants' motions for new trials in the district court.

The three questions presented here are:

1. Was the interest acquired by United to the minerals in place or to a share of oil and gas produced?

2. Did the transaction between Butlers and United violate the rule against perpetuities?

3. Did the recording of the royalty conveyance impart notice to appellees?

The royalty conveyance, which was properly acknowledged and recorded in Ellis county, contained the following in its text:

". . . party of the first part [consideration] does hereby bargain, sell . . . to second party . . . an undivided one half . . . interest in and to the oil and gas royalty, which is or may hereafter be reserved by said party of the first part . . . exclusive of the oil and gas bonus and oil and gas rental money in and under the following described property [description].

"To have and to hold, all the aforegranted estate, property, and easements together with all and singular the rights, privileges and heriditaments thereunder belonging or appertaining unto the said United Royalty Company, an express trust of Newkirk, Oklahoma, its heirs, successors, for a term of twenty-one years *and as long thereafter as oil and gas or either of them is produced in paying quantities on any of the acreages in the block belonging to the United Royalty Company.*

"It is understood and agreed that said first party shall be entitled to have and receive all oil and gas bonuses and rentals from said land other than royalty herein above described. *That in the leasing of said land for oil and gas that the said second party shall not be a necessary party to the leasing of said land and the said second party hereby authorizes the said party of the first part . . . to lease said land for oil and gas purposes.*

. . . . . . . . . . . . . . .

"It is understood and agreed that *this royalty is not transferable but shall be held in trust by the United Royalty Company, an express trust of Newkirk, Oklahoma. . . .*" (Our emphasis.)

Attached to the above was a fifty-cent internal revenue documentary stamp.

The trial court found this was merely a transfer of one half of the landowner's interest in and to oil and gas that might be produced from the land, which had become denominated as an oil and gas royalty. It is true that the instrument is headed "Royalty Conveyance" but we are not governed by the name or title affixed to a document. This court has many times said that we will look to the language of a contract contained in its four corners and from there find the intention of the parties as to what kind of a contract they intended to make. (*Rutland Savings Bank v. Steele,* 155 Kan. 667, 127 P. 2d 471; *Heckard v. Park,* 164 Kan. 216, 188 P. 2d 926; *Dennett v. Meredith,* 168 Kan. 58, 211 P. 2d 117; 17 C. J. S., Contracts, § 295, p. 689, § 296, p. 695; 24 Am. Jur., Gas and Oil, § 22, p. 533.)

There is merit in what appellees contend that *royalty, royalty*

*deed, royalty conveyance,* and *mineral deed* are terms that have been loosely and interchangeably used by the oil and gas industry and even by some courts. However, the majority of courts have been very careful to guard against confusing these terms. There is a definite difference between minerals in place and minerals severed and produced from the land. Minerals, including oil and gas, in place or in and under the land are termed as realty, are part of the land or fee, or real estate, and a transfer of interests in this type of minerals is held to be a severance of the fee. In other words, one person may own the surface of the land while another person may own the minerals under the surface. On the other hand, royalty in oil and gas severed and produced from the land under an oil and gas lease is merely personal property and does not create any interest in the minerals under the land or cause a severance of the fee. There are numerous authorities generally that explain or differentiate between them (*Palmer et al. v. Crews,* 203 Miss. 806, 35 So. 2d 430, 4 A. L. R. 2d 483, anno. 492; *Bruner Estate,* 363 Pa. 552, 70 A. 2d 222, 18 A. L. R. 2d 92, headnote 3, anno. 98; 24 Am. Jur., Gas and Oil, § 94, p. 597) and also in Kansas. (*Dennett v. Meredith,* supra; *Lathrop v. Eyestone,* 170 Kan. 419, 227 P. 2d 136; *Tegarden v. Beers,* 175 Kan. 610, 265 P. 2d 845; *Storm v. Barbara Oil Co.,* 177 Kan. 589, 282 P. 2d 417.) Additional authorities were cited in the very complete briefs submitted in this case, but it is not necessary to set out all of them.

In their brief appellees concede that when the agreement, which covered the trust relation and contract between United and the Butlers, was recorded in the office of the register of deeds in Ellis county on March 15, 1952, that was the first notice appellees had had which indicated a claim to oil and gas in place. In view of this concession on the part of appellees we do not see any necessity for setting out the terms of the contract and pooling agreement. The pertinent parts of this agreement were contained in the stipulated facts which are briefly set out at the beginning of this opinion.

For the sake of argument, we might go along with appellees' theory that since the contract and pooling agreement was not filed of record, it would have no effect against a subsequent recipient of a warranty deed. Such a statement of law, standing alone, is correct (*Nordman v. Rau,* 86 Kan. 19, 119 Pac. 351; *Horney v. Buffenbarger,* 169 Kan. 342, 219 P. 2d 345; G. S. 1949, 67-221) but in this case we have the properly recorded royalty conveyance,

which presents a more complex situation. Did the royalty conveyance meet the requirements of a mineral deed, or if not complete or sufficient enough to constitute a mineral deed, did the statements put appellees on notice that there might be other writings which would fully set out United's claim? We think those statements did. (39 Am. Jur., Notice and Notices, § 12, p. 238.) Had the royalty conveyance stopped after it stated, in short, that United was to receive one half of Butlers' oil and gas royalty . . . *reserved . . . exclusive of . . . bonus . . . rental money in and under the described property,* it might be considered as conveying only a naked royalty. However, the royalty convey-ance continues to show United to be a trust of Newkirk, Oklahoma; the tenure of the instrument to be twenty-one years, or as long as there is production on any of the acreages in the block belonging to United; the waiver on the part of United to be a party to the leasing of the land authorizing the Butlers, or their assignees to lease for oil and gas; and finally, that the interest held in trust by United cannot be transferred.

Appellees' contention is not well founded that if this were notice of something which would cause an ordinarily prudent person to investigate, it would work a hardship because he would have to examine records of every county in numerous states to ascertain the trust details. All appellees would have had to do would have been to check with United or to check the records in Oklahoma, either in Oklahoma City, or in Kay county, Oklahoma, where Newkirk is located.

Appellees contend that the instrument expired in twenty-one years. This contention probably reflects what actually caused them to make no investigation of their own. It was easy to say the instrument had expired in twenty-one years and to ignore everything else set out which put them on notice and about which they should have investigated. (*Penrose v. Cooper,* 88 Kan. 210, 128 Pac. 362.) Since appellees were put on notice because there were terms in the recorded instrument which were incomplete, they were then charged with whatever knowledge was set forth in the contract and pooling agreement, as well as the certificate for 4,480 units issued to the Butlers. All three of these instruments were a part of the trust arrangement. (*Federal Land Bank v. Girtch,* 151 Kan. 528, 99 P. 2d 768; *In re Estate of Garden,* 158 Kan. 554, 562, 148 P. 2d 745.) This was not an ordinary sale of royalty between individ-

uals. Instead it was a pooling of minerals in place among land-owners so that one could profit from any oil and gas under the land of the others whether in Kansas or some other state covered by the pool. The landowners themselves were the holders of the units of United, and even though they deeded away part of their fee in the minerals in place under their land, they were to receive an interest in the minerals in place under the land of the other land-owner members of the pool or trust. This was not an uncommon arrangement in Kansas as can be seen from *Fitch v. United Royalty Co.*, 143 Kan. 486, 55 P. 2d 409; *Johnson v. Allen*, 178 Kan. 348, 285 P. 2d 764, and a number of other cases involving The Kansas Farmers Union Royalty Company.

The trial court found that the affixing of a federal internal revenue documentary stamp was sometimes done as a precautionary measure or in ignorance of the law requiring it. We must take issue with such generalities because the Internal Revenue Code for 1954 (26 U. S. C. A. § 4361, p. 200) in the main states:

"There shall be imposed a tax on each deed, instrument, or writing . . . whereby any lands, tenements, or other royalty sold . . . when the consideration or value of the interest or property conveyed . . . exceeds $100 and does not exceed $500, in the amount of 55 cents."

The wording of the prior law was practically identical as that set out above except that the amount of the stamp was fifty cents. United complied with the law in affixing the stamp because we notice that following the above quoted law there appears in note 8, page 203, among others, a federal decision from Oklahoma requiring this stamp to be affixed to a mere oil and gas lease, which was considered realty. (*Phillips Petroleum Co. v. Jones*, 176 F. 2d 737, certiorari denied, 339 U. S. 904, 94 L. ed. 1333, 70 S. Ct. 518.) The presence of this stamp on the recorded instrument might well have raised a question in the minds of the appellees which would have caused them to make an investigation of the possible further propensities of the royalty conveyance.

The rule against perpetuities does not apply in this case because United's interest vested immediately. (*Kenoyer v. Magnolia Petroleum Co.*, 173 Kan. 183, 245 P. 2d 176; 70 C. J. S., Perpetuities, § 6, p. 580.)

In view of what has been said, the trial court erred in quieting title to the land in question in appellees and against appellants' interest

in minerals in place and in failing to quiet appellants' title to one sixteenth of the minerals in place as against appellees.

The judgment in each case is reversed with directions to enter judgment quieting appellants' title in and to an undivided one sixteenth interest in and to the minerals in place in and under the land involved as against any and all claims of appellees.