ARKANSAS VALLEY ROYALTY COMPANY *v.* ARKANSAS-OKLAHOMA GAS COMPANY.

5-101                                                    258 S. W. 2d 51

Opinion delivered May 25, 1953.

*Lee Seamster, Don Trumbo* and *E. J. Ball,* for appellant.

*Daily & Woods* and *Moore, Burrow, Chowning & Mitchell,* for appellee.

ROBINSON, Justice. The principal issue is whether a certain instrument conveys a one-eighth royalty to an undivided interest in the oil, gas, and other minerals that may be produced from the described property; or is it a deed to the fee in an undivided interest in such minerals. The Chancellor held it to be a conveyance of a one-eighth royalty. We agree with the Chancellor.

At the time of his death in the latter part of August, 1927, J. A. Kelley owned and occupied as a homestead 120 acres on which was outstanding an oil and gas lease in favor of the Southern Union Gas Company. Kelley died intestate, survived by a widow and seven sons and daughters. On March 26, 1931, the widow Mary E. Kelley, two of the daughters with their husbands, and one son with his wife executed and delivered to the Arkansas Valley Royalty Company, a corporation, an instrument prepared by H. H. Ball on a printed form entitled "Mineral Deed." The blank spaces in the form were filled in with pen and ink by Mr. Ball, president of the grantee corporation. That part of the deed which is in Ball's handwriting is indicated by italics; the pertinent part of the conveyance is as follows:

"Know All Men by These Presents, That *Mary E. Kelley, a single woman, John H. Kelley, Lana Kelley, Will Triplett and Anna Triplett,* of *Franklin* County, State of *Arkansas* for and in consideration of the sum of *One and no/100* Dollars (*$1.00*) cash in hand paid by *The Arkansas Valley Royalty Company,* hereinafter called Grantee, and other good and valuable considerations, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said Grantee an undivided *All full Royalty* interest in and to all of the oil, gas, and other minerals in and under, and that may be produced from the following described land situated in *Franklin* County, State of *Arkansas,* to-wit: *All of our 1/8 interest, Each, in the following land: The Northeast 1/4 of the Northeast 1/4 of Sec. 26, and the Southeast 1/4 of the Southeast 1/4 of Sec. 23, and the Southwest 1/4 of the Southwest 1/4 of Sec. 24, all in Twp. 9 North of Range 29, West, containing 120 acres. This Deed is made for 1/8 interest to Each one owning an interest in said land. Which is 1/8 Interest to each one signing deed all Heirs of Mrs. M. E. Kelley* of Section *23-26-24* Township *9* Range *29* containing *120* acres more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling,

and exploring said lands for oil, gas, and other minerals and removing the same therefrom. Said land being now under an oil and gas lease executed in favor of *Southern Union Gas Company,* it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes *full Royalty* of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described. It is understood and agreed that *all full royalty* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited, then and in that event, an *full royalty, All of our Interest* of the lease interests and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said Grantee *now* owning *Full Royalty, All* of all oil, gas and other minerals in and under said lands, together with............................interest in all future events. To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantee herein, *their* heirs and assigns forever; and Grantor do hereby bind sel*ves our* heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Grantee herein, *their* heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.''

The lease held by Southern Union Gas Company, referred to in the Arkansas Valley Royalty Company instrument, was cancelled and forfeited and no well was ever drilled pursuant to that lease.

On October 5, 1943, all seven of the children of J. A. Kelley and Mary E. Kelley, his widow, executed an Oil and Gas Lease to Arkansas-Oklahoma Gas Company, and on the 29th day of December, 1949, that company conveyed to Arkansas-Louisiana Gas Company an undivided ½ interest in the lease. Land covered by the lease is in the Cecil Gas Field in Franklin County. Gas has been

discovered in that field and the Arkansas Oil & Gas Commission has established 640-acre drilling units.

Appellant Arkansas Valley Royalty Company contends the document set out above conveys to it the fee interest in the minerals owned by those who signed the conveyance. Appellees Arkansas-Oklahoma Gas Co. and Arkansas-Louisiana Gas Co. maintain that the document only conveys a ⅛ royalty interest owned by the signers thereof. John H. Kelley, his wife Lanie E. Kelley, Annie Triplett and Hettie Eubanks claimed in the trial court that their signatures to the conveyance to the Arkansas Valley Royalty Co. were obtained by fraud, but have not appealed from an adverse ruling on that point.

There are two issues; one, does the document convey a ⅛ royalty in the undivided interest of those who signed it, or is it a deed to the fee interest in the minerals owned by those who signed; second, are appellees barred by laches from denying the instrument is a deed to a fee interest in the minerals.

The least that can be said of the instrument is that it is ambiguous. It contains words indicating it was intended as a conveyance of a fee interest in the minerals; on the other hand, words and phrases are used leading one to believe a conveyance of a full ⅛ royalty was all that was intended. It is prepared on a printed form entitled "Mineral Deed." It gives the grantee the right of ingress and egress for the purpose of drilling, etc.; it "includes full royalty of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described." It states "that all full royalty of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the above-described lease for any reason becomes cancelled or forfeited, then in that event a full royalty, all of our interest of the lease interests and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said grantee now owning full royalty, all of all oil, gas and

other minerals in and under said lands together with ...........................interest in all future events.''

From the language just quoted, it can be argued that a mineral fee is transferred; however, the conveyance also provides ''have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said Grantee an undivided full royalty interest'' . . . ''that may be produced from the following described land'' . . . ''all of our ⅛ interest, each'' . . . ''this deed is made for ⅛ interest to each one signing deed all heirs of Mrs. M. E. Kelley'' . . . ''it is understood and agreed that this sale is made subject to said lease (Southern Union Gas Co. lease) but covers and includes full royalty'' . . . ''it is understood and agreed that all full royalty of money rentals'' . . . ''then and in that event a full royalty.''

At the outset the granting clause does not mention conveying a fee interest in the minerals, but ''an undivided all full royalty''; also ''all of our ⅛ interest, each'' . . . ''this deed is made for ⅛ interest'' . . . ''which is ⅛ interest to each one signing deed all heirs of Mrs. M. E. Kelley.'' The reference is definitely to the children of Mrs. Kelley, which are 7 in number, and if they were conveying all of their fee interest they would be conveying a 1/7 each and not a ⅛; whereas ⅛ is their royalty interest. If it had been the intention of the parties to convey a mineral fee subject to the outstanding lease, it would have been a very simple matter to have done so without the use of language calculated to lead one to believe only a royalty was being conveyed, especially when a mineral deed form was being used.

The deed was prepared by the president of the grantee corporation; the Supreme Court of Mississippi in *Palmer* v. *Crews*, 203 Miss. 806, 35 So. 2d 430, 4 A. L. R. 2d 483, pointed out that the terms ''royalty,'' ''minerals in place,'' and ''lease of oil, gas and other minerals'' have a well defined meaning as separate and distinct estates when one is compared to the other; and then,

referring to the person who prepared the document in question in that case, said: "And a practical man of many years experience in the oil business, serving as *president of a royalty company,* is presumed to know and fully understand the difference between these separate estates."

"In construing a written instrument it should be interpreted most strongly against the party who prepared it." *Marley v. Hackler,* 176 Ark. 238, 3 S. W. 2d 20; *W. T. Rawleigh Co. v. Wilkes,* 197 Ark. 6, 121 S. W. 2d 886; *New York Life Ins. Co. v. Dandridge,* 202 Ark. 112, 149 S. W. 2d 45, 134 A. L. R. 1519.

In *Longino v. Machen* 217 Ark. 641, 232 S. W. 2d 826, there was an issue similar to the one involved here, and there the Court said: "The deed under consideration is unquestionably ambiguous, but we have concluded that the Chancellor's construction is a more reasonable one than that suggested by the appellants. When the instrument is examined in its entirety it is seen to make three separate references to 'royalty' as being the subject of the conveyance. We are aware that this term is sometimes loosely used to mean an interest in minerals in place, but it is well settled that the ordinary and legal meaning of the term is a share of the product or profit, to be paid to the Grantor or Lessor by those who are allowed to develop the property . . . On two occasions we have interpreted language not wholly dissimilar to that now before us as meaning royalty payments to the lessor rather than an interest in the minerals themselves . . . When we realize how easily the parties might have conveyed an interest in the minerals by the execution of an ordinary mineral deed we do not feel justified in saying that instead they sought to accomplish the same result by the cumbersome and roundabout method now urged by the appellants."

The conveyance to appellant by Mrs. Kelly, a son, and two of her daughters, dated March 26, 1931, was in the chain of title of appellees' lease dated October 5, 1943. This suit was filed by appellees May 23, 1952;

therefore appellant contends appellees are barred by laches and estoppel from now asserting the conveyance to the appellant was not a deed to a fee interest in the minerals. But appellees say they had no way of knowing appellant was going to claim the conveyance was such a deed rather than a transfer of royalty.

Since we are holding the conveyance to appellant was one of royalty and not of a fee interest in the minerals, appellant has not been prejudiced by the delay in filing the suit, even if it could have been filed at a substantially earlier date.

Affirmed.