436 P.2d 107

The ATLANTIC REFINING COMPANY, a corporation, Plaintiff-Appellee,

v.

C. J. BEACH, Edna Beach, Helen H. Bellows, Ben Graham, Ethel Graham, Floyd B. Graham, G. T. Hall, W. C. Hubbard, W. S. Montgomery, Louise Wright Simpson and Elwood Roy Wright, heirs and devisees of Gladys Louise Price, Deceased, Herbert C. Maxwell and Alva L. Maxwell, Defendants-Appellees.

W. B. Price and H. J. Loe, Defendants-Appellants.

Nos. 8049, 8341.

Supreme Court of New Mexico.

Jan. 8, 1968.

Hinkle, Bondurant & Christy, Michael R. Waller, Roswell, for Atlantic Refining Co.

Harvey C. Markley, Lovington, for C. J. Beach and Edna Beach.

Heidel, Swarthout & Samberson, Lovington, for Hubbard, Montgomery and Bellows.

A. D. Solsbery, Roswell, McCormick, Lusk, Paine & Feezer, Carlsbad, for Floyd Graham, Ben Graham and Ethel Graham.

Robert W. Ward, Lovington, for Simpson and Wright.

John F. Russell, Roswell, for Herbert C. Maxwell and Alva L. Maxwell.

Girand, Cowan & Reese, Hobbs, for appellants.

## OPINION

NOBLE, Justice.

Atlantic Refining Company (hereafter referred to as Atlantic) brought suit to quiet title to its lease and mineral interest in certain real estate. The suit required construction of a conveyance denominated "Mineral Deed" as to whether it conveyed a 1/16 of the minerals in place, or 1/2 of the usual 1/8 royalty. This appeal is from a judgment interpreting the instrument as one conveying a royalty interest, construing the reservation in the grantor, and quieting the title to the various mineral interests based upon these constructions.

After the appeal, a motion was filed and an order entered in Cause No. 8049, on the Supreme Court docket, making Alva Love Maxwell and Herbert C. Maxwell, Jr., parties as appellees to the appeal from the judgment in the suit to quiet title. Cause No. 8049, on the docket of this court, has been consolidated with No. 8341 and the disposition of Cause No. 8341 will likewise dispose of No. 8049.

It is agreed that the land involved in this appeal was owned in fee simple by T. L. Price, as his separate estate. Price, during his lifetime, executed an instrument conveying to L. W. Kitchen certain interests and reserving to himself certain interests. There followed other deeds and leases covering the mineral interests in these lands, but the parties agree that all transfers stem from the Price ownership of the land and the interests conveyed to Kitchen and those retained by Price. Questions concerning the effect of the Price will and of a pretermitted child were resolved by Price v. Johnson, 78 N.M. 123, 428 P.2d 978.

The Price-Kitchen instrument conveyed an undivided 1/16 interest in "all the oil, gas and other minerals, in and under, or that may be produced from" forty acres of land "together with the right of ingress and egress at all times for the purpose of developing the same." The granting clause was then followed by the intention provision:

"This conveyance is intended only as a Mineral Deed and to convey only an undivided one half of the Royalty on the above described Forty Acres of land to wit: An undivided one sixteenth of said Minerals thereunder or which may be produced therefrom, but not so as to affect in any way the title in fee simple to said lands nor to convey any interest whatever in or to any rentals or future rentals of Oil, or Gas minerals in under or that may be produced from said lands, but same is reserved unto grantor, specifically, and in [sic] the intention of this mineral deed is to convey, and it is so understood, and [sic] undivided one half of the Royalty, or an Undivided one sixteenth (1/16) of the Minerals thereunder."

and the habendum which warranted the title "in so far as it covers and includes an undivided one sixteenth (1/16) interest in and to said above described Forty acres of

Minerals in and to said lands hereinabove described."

Appellants, Price and Loe, argue that the instrument is a mineral deed conveying to Kitchen and his grantees an undivided ⅟₁₆ interest in the minerals in place, and that they are, accordingly, entitled only to ⅟₁₆ of the ⅛ royalty. The appellees, on the other hand, contend that a proper construction of the whole instrument makes it apparent that it was intended to grant an undivided ½ of the royalty.

Appellants further argue that because the instrument is entitled "Mineral Deed"; because it refers to the right of ingress and egress for purposes of development; because it contains language "an undivided one sixteenth of said Minerals thereunder"; and because the habendum warrants "an undivided one sixteenth (⅟₁₆) interest in and to said above described Forty acres of Minerals," it grants an interest in the minerals in place.

■■ The proof in this instance consists of documentary evidence and depends upon a proper construction of the language of the Price-Kitchen deed. In such circumstances, we are in as good a position as was the trial court to determine the facts and are, accordingly, not bound by the trial court's findings. Newbold v. Florance, 56 N.M. 284, 243 P.2d 597; State ex rel. Reynolds v. Sharp, 66 N.M. 192, 344 P.2d 943; Garry v. Atchison T. & S.F. Ry., 71 N.M. 370, 378 P.2d 609. As in Jones v. Int'l Union of Operating Eng'rs, 72 N.M. 322, 383 P.2d 571, and Jernigan v. New Amsterdam Cas. Co., 69 N.M. 336, 367 P.2d 519, the question of whether an uncertainty or ambiguity exists is one of law for the courts to determine. See Southwest Motel Brokers, Inc. v. Alamo Hotels, Inc., 72 N.M. 227, 240, 382 P.2d 707.

■■ Canons and rules of construction are but aids in determining the intention of the instrument and all rules of construction must yield to the expressed intention of the parties. Davis v. Hardman, 148 W. Va. 82, 133 S.E.2d 77. In this case, the parties offered no testimony in support of any claimed construction of the language of the instrument. We must, accordingly, interpret the intention from the language of the instrument itself. Under such circumstances, we are committed to the rule that the intention of the parties "as gathered from the four corners of the deed is the polestar of construction and that all parts of the deed must be examined together for the purpose of ascertaining the intention." Sharpe v. Smith, 68 N.M. 253, 360 P.2d 917; Price v. Johnson, supra. Applying these rules, we agree with the appellees that the deed granted a royalty interest.

■ While some diversity of opinion exists concerning the effect of the title of an instrument on its construction, the title does not appear to have ever been given a conclusive effect in construction. At 1 Williams & Meyers, Oil & Gas Law, § 304.1, we find:

"* * * Never does the title prevent a construction that the court thinks is correct and rarely does it impel a court to a construction it would not otherwise make. * * *"

Thus, the title "Mineral Deed" is of little aid in construing the effect of this instrument. See Rutland Sav. Bank, etc. v. Steele, 155 Kan. 667, 127 P.2d 471.

■ The creation of exploration and development easements in the instrument, such as the right of ingress and egress, is not controlling in determining whether it conveys minerals in place or transfers royalty only. See 1 Williams & Meyers, Oil & Gas Law, § 304.13; McDonald v. Bennett, 112 W.Va. 347, 164 S.E. 298. Where the instrument as a whole has been considered, and other more persuasive provisions outweigh those of development easements, a number of courts have construed the interest transferred to be royalty, despite the grant or reservation of express easements. Arkansas Valley Royalty Co. v. Arkansas-Oklahoma Gas Co., 222 Ark. 213, 258 S.W.2d 51; Colonial Royalties Co. v. Keener, 266 P.2d 467 (Okl.).

The intention clause of the deed before us commences:

"This conveyance is intended only as a Mineral deed and to convey an undivided one half of the Royalty on the above described forty acres of land to-wit:"

The intention clause then continues:

"An undivided one sixteenth of said Minerals thereunder or which may be produced therefrom, but not so as to affect in any way the title in fee simple to said lands nor to convey any interest whatever in or to any rentals or future rentals of Oil, or Gas minerals in under or that may be produced from said lands, but same is reserved unto grantor, specifically * * *."

The intention to reserve unto the grantor and not to grant minerals in place is apparent. The intention clause then, in unmistakable language, continues:

"and in [sic] the intention of this mineral deed is to convey, and it is so understood, and [sic] undivided one half of the Royalty, or an Undivided one Sixteenth (1/16) of the Minerals thereunder."

■ We defined a royalty interest in Duvall v. Stone, 54 N.M. 27, 213 P.2d 212, as:

" 'Royalty' interest in oil and gas reserved in a deed or provided for in an oil and gas lease, is a share of the product or profits (ordinarily 1/8) reserved by the owner for permitting another to develop his property for oil and gas, usually without expense to the property owner."

Thus, the language repeated in the intention clause that it is the intention to convey only an undivided 1/2 of the royalty means a grant of 1/2 of the usual 1/8 royalty.

Appellants particularly rely upon the words "thereunder" and "in and under" as determinative of the interest granted and requiring a construction that the instrument granted a mineral interest rather than a royalty interest. We cannot agree.

It is true that ordinarily a conveyance of 1/16 of the minerals "in and under" or "thereunder" without further provision has been construed as creating a mineral interest. Prairie Oil & Gas Co. v. Allen, 2 F.2d 566, 40 A.L.R. 1389 (8th Cir. 1924); Smiley v. Thomas, 220 Ark. 116, 246 S.W.2d 419; Rutland Sav. Bank, etc. v. Steele, supra, but additional language in the instrument can change this result. Thus, a reservation of "an undivided one-half (1/2) interest in the oil, gas and other minerals in, under and on said property but (grantor) shall not be entitled to receive any part of any bonuses * * * or rentals" was interpreted as a royalty reservation because of the lack of participation in bonuses and rentals. Hudgins v. Lincoln Nat'l Life Ins. Co., 144 F.Supp. 192 (E.D.Tex.1956).

The weight of the decided cases construe instruments describing the intention to grant or reserve a royalty interest, to convey or reserve that interest only despite the presence of "opposite tending mineral terminology." 1 Williams & Meyers, Oil & Gas Law, § 304.8 and § 304.10. See also Arkansas Valley Royalty Co. v. Arkansas-Oklahoma Gas Co., supra; Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699; Armstrong v. Bell, 199 Miss. 29, 24 So.2d 10.

■ Thus, it will be noted that the instrument states and reiterates the intention that it grants only an undivided one-half of the royalty in all oil, gas or other minerals "in or under" or that may be produced from said land. We do not think that the words "thereunder" or "in and under" change the nature of the interest reserved, into a mineral interest, as distinguished from a royalty interest. Throughout the entire intention clause of the instrument, the granted interest is referred to as a royalty, and the fee in the minerals themselves, together with the right to any bonus, rentals, or delayed rentals, is reserved to the grantor. See Arnold v. Ashbel Smith Land Co., 307 S.W.2d 818 (Tex.Civ.App.1957).

In view of our construction of the intention clause, the warranty of "an undivided

one-sixteenth (1/16) interest in and to the above described forty acres of minerals" does not require a different result.

T. L. Price and his wife conveyed 200 acres of land to J. E. LeMond by warranty deed with the following reservation:

"3rd. Grantors also reserve an undivided 1/16th interest in the Minerals in or under the SW1/4th of said SE1/4th of said Section 15 which interest has heretofore been sold; the grantors also reserve for themselves one-half of the remaining 15/16th mineral interest in said SW1/4th of said SE1/4th, of said Section 15 in said Township 15 South of Range 38 East."

Two questions are presented concerning a construction of the Price-LeMond deed: (1) the quantum of the estate reserved and (2) whether Price's successors must bear the burden of the Kitchen royalty or whether it should be borne proportionately.

■ This deed granted and warranted to LeMond the surface and 1/2 of 15/16, or 15/32 of the minerals in the SW1/4 SE1/4, Sec. 15, and reserved the 1/16 interest in the minerals theretofore sold, and 1/2 of the remaining 15/16 of the minerals. The language employed makes it apparent that Price reserved from the sale 17/32 of the minerals, but the deed was, of course, subject to the prior Kitchen conveyance of 1/2 of the usual 1/8 royalty, or an interest equal to 2/32 of the minerals produced. It is equally apparent that the reservation left the grantors with enough minerals and royalty to satisfy the previous royalty grant without affecting the conveyance to LeMond of a full 15/32 of the minerals unburdened by the Kitchen royalty interest. The grantors having warranted a full 15/32 of the minerals and having the right to do so will be held to that undertaking.

■ If the deed should be interpreted to reserve to the grantors a full 17/32 of the minerals unburdened by 1/2 of the royalty theretofore conveyed to Kitchen, the warranty would be breached by the grantor at the very moment of its execution because the deed warrants the title to the surface

estate and to 15/32 of the minerals, free and clear of all encumbrances; but, in this instance, the grantor, by reserving a 17/32 interest in the minerals, reserved to himself mineral rights out of which the royalties already conveyed were to be satisfied. See Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878; Selman v. Bristow, 402 S.W.2d 520 (Tex.Civ.App.1966); 36 Tex.L.Rev. 397, 412.

■ Reading all of the provisions of the Price-LeMond deed together makes it clear that there was conveyed to LeMond 15/32 of the minerals unburdened by the Kitchen royalty interest. Price reserved from the LeMond conveyance 17/32 of the oil and gas mineral fee, subject to the entire burden of the Kitchen royalty interest. The covenant of warranty does not affect or impair that title so reserved.

Our construction of these deeds merely relieves LeMond and his grantees of the burden of any part of the royalty interest held by Kitchen and his grantees.

W. B. Price leased the land involved in this case to Atlantic with a provision for a royalty of 1/20 of the oil produced and saved. Price conveyed 1/3 of his interest to H. J. Loe. By their third point, Price and Loe contend that they are entitled to the full 1/20 royalty to be divided 2/3 to Price and 1/3 to Loe, and that the trial court erred in determining that W. C. Hubbard, Helen H. Bellows and W. S. Montgomery, grantees under the Kitchen interest, were each entitled to 1.562500 percent of said royalty, and that Price and Loe were entitled only to the remainder in the proportions of 2/3 to Price and 1/3 to Loe. They argue that the result contended for by them is made necessary by a provision in the Price-Atlantic lease:

"12. This lease is made without warrant of title, express or implied, and the royalties and rentals hereinabove provided for shall not be reduced for any reason whatsoever."

Relying upon our decisions in Davies v. Boyd, 73 N.M. 85, 385 P.2d 950, and Woodson v. Lee, 73 N.M. 425, 389 P.2d 196, they argue that the contract provides for a royal-

ty of the full five percent of the oil produced, to be paid to the lessors and that the court may not alter or make a new contract for the parties. Those decisions provide no support for the position asserted. Price had the "executive rights" to lease the property; the lease covered all the oil and gas in the property; the payment to be made thereunder was for exactly that; and Atlantic paid the full royalty provided by the lease without any reduction under Section 12. See Klein v. Humble Oil & Ref. Co., 126 Tex. 450, 86 S.W.2d 1077, and Hooks v. Rocket Oil Co., 191 Okl. 431, 130 P.2d 846. We have heretofore said that the interest reserved and retained by Price was $\frac{17}{32}$ of the oil and gas mineral fee, subject to the entire burden of the Kitchen royalty interest. The interest in the Price-Atlantic royalty decreed to Hubbard, Bellows and Montgomery is a part of the burden of the Kitchen royalty interest.

Finally, Price and Loe contend that after the decision on other issues, it becomes apparent that a mistake of fact occurred as to the consideration to be paid under the Price-Atlantic lease, and that reformation is the proper remedy. We cannot agree. The trial court, considering the pleadings and depositions tendered with respect thereto, entered summary judgment dismissing the claim for reformation. We said in Buck v. Mountain States Investment Corp., 76 N.M. 261, 414 P.2d 491:

> "It is well established in this jurisdiction, and generally, that a court of equity may grant reformation of a contract where either by mutual mistake of the parties, or through mistake on the part of one party and fraud or inequitable conduct on the part of the other party, the written instrument drafted to evidence a contract fails to express the real agreement and intentions of the parties."

As we view the arguments here, it is not contended that there was a mutual mistake concerning the consideration for the lease, but the appellants appear to argue that they understood something different and that Atlantic is guilty of overreaching. Again, we cannot agree with appellants' position in view of the depositions of Price and Loe that the attorney for Atlantic told Mr. Loe, a lawyer, to write the lease and send it to Atlantic's bank, that he did so write it, and that the bonus was paid. No disputed issue of fact has been pointed out to us. We find no error in granting summary judgment dismissing the claim for reformation.

Our disposition of these questions makes it unnecessary to detail the present ownership of the undivided mineral or royalty interests or to consider other questions presented or argued. Other questions argued have either been disposed of by what has been said or found to be without merit.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

MOISE, J., and WOOD, J., Court of Appeals, concur.